**Davis Miles**
**McGuire Gardner**

320 N. Leroux Street, Suite A
Flagstaff, AZ 86001
Telephone: (928) 779-1173
Fax: (877) 715-7366
efile.dockets@davismiles.com

Pernell W. McGuire (SBN: 015909)
pmcguire@davismiles.com
Aubrey L. Thomas (SBN: 029446)
athomas@davismiles.com
*Proposed Attorneys for Debtors*

# IN UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| In re: | Case No. 2:14-bk-01451-RJH |
|---|---|
| GILBERT HOSPITAL, LLC, | **DECLARATION OF BRYAN HARGIS IN SUPPORT OF FIRST DAY MOTIONS** |
| Debtor. | |

COMES NOW Bryan Hargis and states as follows:

1. I am over the age of 18 years and competent to make this Declaration.

2. I am the Chief Executive Officer ("CEO") of Gilbert Hospital, LLC ("Debtor"), the Debtor and Debtor-in-Possession in this Chapter 11 Bankruptcy Case.

3. All facts stated herein are to the best of my knowledge and based on the information gained by me in the ordinary course and scope of my employment as the Debtor's CEO (which position I have only held for the past few weeks), including

1

information derived from the Debtor's business records, which are kept in the ordinary course of the Debtor's business.

## I. First Day Motions

4. On February 5 and 7, 2014, the Debtor filed in the United States Bankruptcy Court for the District of Arizona, among other things, the following motions:

   a. Debtor's Voluntary Petition;

   b. Application to Employ Counsel for the Debtor

   c. Emergency Motion for Entry of Interim and Final Orders under 11 U.S.C. §§ 105, 345, and 363 Authorizing Maintenance and Use of Debtor's Existing Bank Accounts, Cash Management System, and Business Forms;

   d. Emergency Motion for Entry of Interim and Final Orders Authorizing Payment of Pre-Petition Wage, Benefits, and Reimbursement of Certain Other Employee Related Claims; and

   e. Motion for Accelerated Hearing on Debtor's First Day Motions.

## II. Debtor's Business

5. The Debtor is an Arizona limited liability company with its principal operations in Gilbert, Arizona which is located in Maricopa County. The Debtor owns and operates Gilbert Hospital ("Hospital"), a licensed and general-acute care hospital that is open 24 hours a day, seven days a week. The Debtor opened the Hospital in 2006. The Debtor's core business strategy is to provide general acute hospital care for patients by providing

2

emergency services that are complemented with diagnostic, observation, inpatient, and surgical services.

6. The Debtor operated profitably from 2006 until 2012. However, due to a number of business related issues, including 1) ongoing road improvements on Power Road making it more difficult for ambulances and patients to access the hospital for treatment resulting in lower emergency room volume, which in turn feeds inpatient, ICU and surgery volume; 2) the opening of two new major hospitals in the Gilbert area, Banner Ironwood and Mercy Gilbert Hospital in 2011 and 2012; 3) the filing of certain litigation amongst owners of the hospital leading to unexpected legal bills; and 4) certain insurance companies urging their participants not to seek treatment at the hospital as a result of the absence of insurance contracts, the Debtor began to experience cash flow problems affecting its ability to service its financial obligations.

7. The Debtor has worked to resolve its obligations with its primary creditor Stillwater National Bank ("SNB"), but discussions have reached an impasse, and with the most recent actions taken by SNB, the Debtor had no choice but to seek protection under the Bankruptcy Code.

8. The Debtor believes that it will be able to successfully reorganize and by restructuring its debts, will be able to emerge from bankruptcy and continue to provide quality healthcare services to the Gilbert community.

3

## III. Debtor's Pre-Petition Debt Structure and Need to Use Cash Collateral

### A. Stillwater Bank Credit Facility

9. Substantially all of the Debtor's liquid assets are encumbered by SNB's credit facility. Although the Debtor also has significant unencumbered real property.

10. As of February 5, 2014 ("Petition Date"), the Debtor owes Stillwater Bank the approximate amount of $5.5 million pursuant to three loan facilities evidenced by; 1) Promissory Note in the original principal amount of $5,000,000 dated November 8, 2007 (the "Working Capital Loan"); 2) Promissory Note in the original principal amount of $8,040,000 dated November 8, 2007 (the "Equipment Loan"); and 3) Promissory Note in the original principal amount of $7,328,924 dated November 8, 2007 (the "Land Loan"), together with that certain Security Agreement (Accounts) dated November 8, 2007 and UCC-1 Financing Statement recorded November 9, 2007 (the "SNB Loan Documents").

11. The Debtor's obligations under the SNB Loan Documents are secured by liens on, and security interests in, certain of the Debtor's personal property, identified in the SNB Loan Documents.

12. As of the Petition Date, the Debtor was in default under the SNB Loan Documents.

13. On February 3, 4, and 5, SNB unilaterally, and without providing notice, swept $1.085 million from the Debtor's operating account.

14. As of the Petition Date, the Debtor has an immediate need to use SNB's cash

4

collateral in the ordinary course of the Debtor's business. The Debtor's need for cash collateral is set forth in detail in the *Emergency Motion for Interim and Final Orders Authorizing the Debtor's Use of Cash Collateral* filed contemporaneously with this Declaration.

### B. Debtor's Bank Accounts

15. The Debtor operates with 5 bank accounts:

16. The Debtor's principal bank is SNB. Payments from patients are sent directly to the Operating Account (account 2858). Accounts Payable checks and outgoing bank wires are processed through the Operating Account. The Debtor has 4 authorized check signers within the management group for this account. The Debtor further has an account which receives incoming wires from health insurance payors (account 3153) and another operating account it has used for miscellaneous business needs (account 2240). The Debtor also maintains 2 separate accounts for employee benefits (account 8953) and funding the Hospital's self insured component of its health insurance claims (account 9778).

17. The Debtor's Bank Accounts, including identifying institutions and account numbers is depicted on a chart, attached to the *Emergency Motion for Entry of Interim and Final Orders Under 11 U.S.C. §§ 105(a), 345, and 363 Authorizing Maintenance and Use of Debtor's Existing Bank Accounts, Cash Management System, and Business Forms* as Exhibit "A" (collectively, the "Bank Accounts").

18. In the ordinary course of its business, the Debtor maintains the Bank Accounts.

5

The Debtor's cash management and payroll systems, of which the Bank Accounts are an integral part, provide an efficient and secure means of managing and disbursing cash and the Debtor's payroll obligations.

19. Notably, the Debtor's Bank Accounts are setup with electronic funds transfer payments from the Medicare and Medicaid program and numerous health insurance companies. Closing the Accounts and opening new accounts would deeply disrupt the Debtor's operations and payroll systems, disrupt payment from health insurers and Medicare and Medicaid, and would hinder the Debtor's ability to manage the Hospital at the critical initial stages of its Chapter 11 case. To that end, the Debtor anticipates that switching to new accounts would take at least 3 months to accomplish.

20. The Debtor's relationships with patients, health insurers, Medicare and Medicaid, and employees are essential to its ability to successfully manage the Hospital's operations. If the Debtor is required to substitute new debtor-in-possession bank accounts for each of the Bank Accounts it will cause delay, confusion, and disruption with the Debtor's critical relationships.

**C. Debtor's Employees**

21. As of the Petition Date, the Debtor owed accrued and unpaid wages, salaries, bonuses and/or commissions, including vacation, severance, and sick leave obligations (collectively, the "Wage Claims") to employees (collectively, the "Employees"). The Wage

6

Claims are less than the priority amount of $11,725 per Employee and in the aggregate including all employee and employer deductions will be approximately $282,285.15.

22. The Debtor's ongoing operation of the Hospital requires the employees to continue to work. Debtor believes that some of the employees may stop working if they do not receive their earned compensation and that the failure to pay prepetition wages would adversely affect the morale of the employees.

23. A chart showing the amount owed to each employee is attached as Exhibit "A" to the *Emergency Motion for Entry of Interim and Final Orders Authorizing Payment of Pre-Petition Wage, Benefits, and Reimbursement of Certain Other Employee-Related Claims* and is incorporated herein by this reference.

24. In the ordinary course of business, the Debtor may also withhold from payroll checks: (i) Employee contributions to 401(k) or other retirement plans; (ii) Employee contributions to medical, dental, insurance, disability, or similar plans; and (iii) other contributions or obligations of the Employees as directed by the Employees or pursuant to applicable law (including Employee wage garnishments). The Debtor anticipates that the pre-petition withholdings are in the approximate amount of $46,419.78.

25. In connection with the payment of wages and other compensation, the Debtor is required under applicable law to withhold from employee payroll checks certain of the Employees' obligations, including, without limitation: federal, state and local income taxes,

7

Social Security, Medicare, and unemployment taxes. The Debtor estimates these amounts to be $81,783.76.

26. In the ordinary course of the Debtor's business, as is customary with many employers, the Debtor has established various benefit plans, programs, and policies for its Employees (collectively, the "Benefit Obligations"). The Benefit Obligations may include, are not necessarily limited to, obligations with respect to the following: (a) medical, dental, vision, and similar plans or benefits; (b) life insurance, accidental death and dismemberment, short-term disability, and similar plans or benefits; and (c) other miscellaneous benefits.

27. In the ordinary course of their duties on behalf of the Debtor, various Employees may from time to time incur certain expenses for which the Debtor customarily reimburses them. In other cases, such expenses are directly charged to the Debtor, although the Employee(s) could be obligated for the expense if the Debtor does not pay for the expense.

**D. Debtor's Utility Services**

28. In the normal course of the Debtor's operations, the Debtor uses telephone and internet services provided by Century Link and CloudNet Group ("Telephone Company").

29. In the normal course of the Debtor's operations, the Debtor uses electrical services provided by SRP ("Electrical Company").

30. In the normal course of the Debtor's operations, the Debtor uses water services provided by the Town of ("Water Company").

8

31. In the normal course of the Debtor's operations, the Debtor uses cable television services provided by Cox Communications ("Cable Company").

32. In the normal course of the Debtor's operations, the Debtor uses gas services provided by Southwest Gas Corporation ("Gas Companies").

33. In the normal course of the Debtor's operations, the Debtor uses cellular services provided by Verizon Wireless ("Cellular Company").

34. In the normal course of the Debtor's operations, the Debtor uses waste disposal services provided by Allied Waste Transportation, Inc. ("Waste Disposal Company").

35. Collectively, the Telephone Company, Electrical Company, Water Company, Cable Company, Gas Company, Cellular Company, and Waste Disposal Company are referred to herein as the "Utility Companies."

36. Any and all services provided by the Utility Companies to the Debtor on the Petition Date are referred to herein as the "Utility Services."

37. The Debtor's business operations depend on the Utility Services for its continued operations and to preserve the value of its assets.

38. Although the Debtor owes certain amounts to the Utility Companies as of the Petition Date, the Debtor has paid its pre-petition telephone, electrical, and water bills in the year preceding the Petition Date.

39. The Debtor anticipates being fully able to make timely post-petition payments to the Utility Companies.

9

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge.

Dated this __7__ day of February, 2014

_____
Bryan Hargis

10

1  A copy of the foregoing mailed
   this __8__ day of February, 2014, to:
2
3  UNITED STATES TRUSTEE'S OFFICE
   230 N. First Ave., Ste. 204
4  Phoenix, AZ  85003

5  Bryce Suzuki
6  Bryan Cave LLP
   Two North Central Avenue, Suite 2200
7  Phoenix, Arizona 85004-4406

8
   20 Largest Unsecured Creditors
9
   By: /s/ Joan Stoner
10     Joan Stoner

7

Case 2:14-bk-01451-MCW   Doc 15   Filed 02/08/14   Entered 02/08/14 10:02:42   Desc
Main Document    Page 11 of 11