**LAW OFFICES**
**SHERMAN & HOWARD L.L.C.**
201 EAST WASHINGTON STREET, SUITE 800
PHOENIX, ARIZONA 85004-2327
TELEPHONE (602) 240-3000
FACSIMILE (602) 240-6600
(AZ BAR FIRM NO. 00441000)
Thomas C. Axelsen (AZ Bar No. 011163)
(taxelsen@shermanhoward.com)
Attorneys for Gateway Anesthesia
Associates, P.L.L.C.

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>GILBERT HOSPITAL, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 2:14-bk-01451-RJH<br><br>**MOTION FOR ENTRY OF ORDER CONFIRMING ABSENCE OR TERMINATION OF STAY**<br><br>**(Re: Termination of anesthesia services agreement)** |

Pursuant to 11 U.S.C. §362(d) and Rule 4001-2, Local Rules of Bankruptcy Procedure for the District of Arizona, Gateway Anesthesia Associates, P.L.L.C. ("Gateway" or "Movant") requests entry of an order confirming the absence of any automatic stay of 11 U.S.C. § 362 with regard to (1) Gateway's prepetition termination of its Anesthesia Services Agreement with the Debtor, (2) the running of the 120-day notice period for said termination, and (3) the effectiveness of said termination.

Alternatively, Gateway requests an order granting such stay relief as is necessary to effectuate an immediate termination of said agreement.

This motion is submitted without prejudice to any administrative or other claims of Gateway arising from the Agreement or services rendered or to be rendered by Gateway.

A Memorandum of Points and Authorities in support of this Motion is attached hereto and incorporated herein by this reference.

| | |
|---|---|
| 1 | DATED: March 3, 2014 |
| 2 | SHERMAN & HOWARD L.L.C. |
| 3 | |
| 4 | By: /s/ Thomas C. Axelsen |
| 5 | Thomas C. Axelsen<br>201 East Washington Street, Suite 800 |
| 6 | Phoenix, Arizona 85004-2327<br>Attorneys for Gateway Anesthesia |
| 7 | Associates, P.L.L.C. |

2

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. Factual and Procedural Background

Gateway and Gilbert Hospital, LLC (hereafter "Debtor" or "Hospital") are parties to a prepetition anesthesia services agreement ("Agreement") whereby Gateway is the exclusive provider of anesthesia services ("Services") to the Hospital. A copy of the Agreement is attached hereto as Exhibit "A" and incorporated herein in its entirety by this reference.

The Hospital wanted the Services to be available twenty-four (24) hours per day, seven (7) days per week. However, according to the Hospital's projections, an average of only sixty (60) cases per month would require Services during the initial months of the Agreement. Based upon these projections, Gateway determined that its costs for staffing the Services would be greater than Gateway would recover though patient and third party billing. Therefore, as inducement for Gateway to enter into the Agreement, the Hospital agreed to pay a monthly coverage subsidy (the "Monthly Subsidy") to Gateway. The terms of such subsidy are set forth in the Agreement at Addendum "B" thereto ("Addendum").

Initially, the Monthly Subsidy payable to Gateway was $11,250.00 (the "Base Subsidy"). The first Base Subsidy was due and payable, in advance, on December 1, 2013. Thereafter, Gateway was to provide the Hospital with a monthly invoice near the beginning of each month, and the Hospital was to pay the invoiced amount within ten (10) days of receipt. *Id.*

On January 7, 2014, Gateway issued its monthly invoice for January, 2014. See Exhibit "B" hereto. The Hospital never paid such invoice.

The actual number of cases requiring Services was only 34 in December of 2013 and only 15 during the period January 1 through January 15, 2014. As a consequence, Gateway determined that Monthly Subsidy, if and when paid by the Hospital, would be insufficient to cover Gateway's cost of providing the Services. Gateway thus elected to terminate the Agreement.

The Agreement provided that either party could terminate the Agreement with or without cause:

> 15. <u>Termination.</u> Should cause for termination arise, which means that either party has breached any term or condition of this Agreement or otherwise failed in its obligations hereunder, the non-breaching party may provide a written notice to the breaching party specifying the nature of the breach. The party in breach will then have thirty (30) days from the receipt of the notice to cure the alleged breach. Should said breach not be cured within thirty (30) *days*, this Agreement may be terminated by the non-breaching party immediately. <u>This Agreement may also be terminated at any time by either party without cause upon the delivery of notice of termination as provided herein below to the other party not less than one and hundred and twenty (120) days prior to the effective date of such termination.</u>

Agreement, Exhibit "A" at p. 15 (emphasis added).

On January 23, 2014, Gateway issued written notice ("Termination Notice") that Gateway was terminating the Agreement without cause. The Termination Notice provided in pertinent part:

> This letter will serve as Gilbert Anesthesia Associates, PLLC's written Notice of Termination as provided for in paragraph 15 of our Anesthesia Services Agreement with Gilbert Hospital, LLC. <u>Note that this termination notice is without cause and, as such, the Agreement will official end 120 days from today's date, which is May 23, 2014.</u>

*See* Termination Notice attached hereto as Exhibit "C" (emphasis added).

The Hospital filed its voluntary Chapter 11 petition on February 5, 2014 ("Petition Date"), which date was thirteen (13) days after Gateway issued the Termination Notice.

By this motion, Gateway requests entry of an order confirming the absence of any automatic stay of 11 U.S.C. § 362 with regard to (1) the Notice of Termination, (2) the running of the 120-day time period following the Notice of Termination, and (3) the effectiveness of said termination on May 23, 2014.

Alternatively, Gateway requests an order granting such stay relief as may necessary, pursuant to 11 U.S.C. § 362(d)(1,2), to fully and finally effectuate a termination of the Agreement.

Gateway has performed prepetition and postpetition Services that benefitted the Hospital, and Gateway continues to perform such Services. This motion is without prejudice to Gateway's administrative or other claims arising from the Services or the Agreement.

**2. Legal Argument**

    **A. Code Section 362(a) Does Not Toll The Running of the 120-day Termination Notice**

The automatic stay of 11 U.S.C. § 362(a) does not toll the running of the 120 days following the Termination Notice, nor does it prevent automatic termination of the Agreement. Similar circumstances were addressed in *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984), *cert. denied*, 469 U.S. 982, 105 S. Ct. 386, 83 L. Ed. 2d 321 (1984), where Amoco Oil Company ("Amoco") had attempted to terminate certain retail petroleum dealerships. On February 3, 1983, Amoco sent termination notices that were to be effective 90 days from the date of the letter. 734 F.2d at 1206. The debtors filed their Chapter 11 petition on February 4, 1983. The Seventh Circuit found that the termination notices were effective on February 3, 1983, when they were mailed, before debtors filed for bankruptcy. 734 F.2d at 1212. The Court further found that the subject contract gave the debtors no right to cure once the termination notices were mailed, and that Amoco did not have to take any further action to terminate the contracts but that termination was automatic at the end of the 90 days. *Id.*

Numerous courts have followed *Moody* in holding that the automatic stay does not toll the mere running of time under a contract, and thus does not prevent automatic termination of a contract. *See Hazen First State Bank v. Speight*, 888 F.2d 574 (8th Cir. 1989); *Counties Contracting and Construction Co. v. Constitution Life Ins. Co.*, 855 F.2d 1054 (3d Cir. 1988); *Johnson v. First National Bank of Montevideo*,

5

PHOENIX/1583830.5
Case 2:14-bk-01451-MCW    Doc 84    Filed 03/03/14    Entered 03/03/14 17:13:35    Desc
Main Document    Page 5 of 11

719 F.2d 270, 273 (8th Cir.1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). *See also*, *e.g.*, *In re Anne Cara Oil Co.*, 32 B.R. 643, 647–48 (Bkrtcy.D.Mass.1983); *In re Nashville White Trucks*, 5 B.R. 112, 117 (Bkrtcy.M.D.Tenn.1980). Thus, the Hospital cannot rely on section 362 to prevent termination of the contracts.

The *Hazen* decision involved a prepetition subordination agreement that was to expire on March 1, 1987. One of the parties to that agreement filed a Chapter 7 petition on February 24, 1987, and the issue was whether termination of the agreement was stayed by 11 U.S.C. § 362(a). The Eighth Circuit held that the expiration date was March 1, 1987 because no act on the part of anyone was required in order for the subordination agreement to expire. Thus, the expiration did not fall within the automatic stay provisions of § 362(a). *Hazen,* 888 F.2d at 576 (citing *Moody*, 734 F.2d at 1213; *In re Beverages Int'l Ltd.*, 61 B.R. 966, 972 (Bankr. D. Mass. 1986) and *In re Heaven Sent Ltd.*, 37 B.R. 597, 597-98 (Bankr. E.D. Penn. 1984)).

The *Counties Contracting* decision involved a prepetition life insurance policy, and the issue was whether the policy remained in effect beyond the extended period allowed for payment of premiums when, prior to the grace period's expiration, the policyholder filed a Chapter 11 petition. The Third Circuit held that the running of the extended grace period was not stayed by 11 U.S.C. § 362(a), holding that § 362's prohibitions against actions taken to obtain possession of the estate property does not affect the tolling of time. *Counties Contracting*, 855 F.2d at 1059.

The *Moody* Court noted that § 365 of the Code only gives a debtor the right to assume an executory contract. If a contract has been terminated pre-bankruptcy, there is nothing left for the debtor to assume. In this case, the Agreement was terminated prepetition, by operation of the Termination Notice. When the Termination Notice was sent, the Hospital was entitled to no more than 120 days of additional Services from Gateway. The filing of the Hospital's petition 13 days later did not expand that right. *Moody*, 734 F.2d at 1213; *Schokbeton Industries, Inc. v. Schokbeton*

6

*Products Corp.*, 466 F.2d 171, 176–77 (5th Cir.1972) and *Kopelman v. Halvajian* (*In re Triangle Laboratories, Inc.*), 663 F.2d 463, 467–68 (3d Cir.1981); *In re Beck*, 5 B.R. 169 (Bkrtcy.D.Haw.1980). This principle is consistent with Code section 541(a), which provides that a debtor's estate consists of "all legal or equitable interests of the debtor in property as of the commencement of a case." Thus whatever rights a debtor has in property at the commencement of the case continue in bankruptcy—no more, no less. Section 541 "is not intended to expand the debtor's rights against others more than they exist at the commencement of the case." *Moody*, 734 F.2d at 1213.

### B. Alternatively, stay relief is appropriate pursuant to 11 U.S.C. § 362(d)(1,2)

To the extent that the automatic stay is in any way applicable to the Notice of Termination or the running of the 120 day notice period, Gateway seeks relief from the automatic stay to fully and finally effectuate a termination of the Agreement pursuant to 11 U.S.C. § 362(d) which provides in pertinent part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay -
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if -
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization; . . .

The standards for relief set forth in 11 U.S.C. § 362(d)(1) and (2) are independent and alternative. Even if the debtor can provide adequate protection as contemplated by § 362(d)(1), relief may be granted pursuant to § 362(d)(2) if the debtor has no equity in the property and the property is not necessary for an effective

7

reorganization. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 108 S. Ct. 626, 98 L.Ed.2d 740 (1988); *La Jolla Mortgage Fund v. Rancho El Cajon Assocs.*, 18 B.R. 283, 286, 289-90 (Bankr. S.D. Cal. 1982).

In addition to the separate and distinct grounds for granting relief from the automatic stay, the Bankruptcy Code places the burden of proof upon the debtor on all issues relating to stay relief other than the issue of equity under § 362(d)(2)(A). Bankruptcy Code § 362(g) provides in pertinent part:

> In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section -
>
> (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
>
> (2) <u>the party opposing such relief has the burden of proof an all other issues</u>.

11 U.S.C. § 362(g) (emphasis added). *See also United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., supra; In re Ellis,* 60 B.R. 432 (9th Cir. B.A.P. 1985). Thus, in the case at bar, for all issues embraced by the relief requested pursuant to § 362(d)(1) and for all issues relative to relief under § 362(d)(2), except Debtor's lack of equity in the Agreement, the burden falls squarely upon Debtor.

The stay relief requested herein is appropriate for cause pursuant to 11 U.S.C. § 362(d)(1), including lack of adequate protection of Gateway's interests with respect to its ongoing performance of postpetition Services. Stillwater Bank has asserted claims to the Debtor's cash flows, and such cash flows are therefore subject to a cash collateral order that restricts the Debtor's ability to pay Gateway.

Gateway should not be required to perform postpetition Services for benefit of the Hospital without adequate assurance of payment. Stay relief is therefore appropriate to terminate the Agreement.

8

Stay relief is also appropriate pursuant to 11 U.S.C. § 362(d)(2) because the Debtor has no equity in the Agreement, and the Agreement is not necessary to an effective reorganization.

The Debtor has no equity in the Agreement. The Debtor is already in arrears on Base Subsidy payments owed to Gateway, and the Agreement is subject to the prepetition Notice of Termination. Gateway is also entitled to its attorney's fees incurred in enforcing its tights under the Agreement. Under these facts, there is no equity in the Agreement.

The Agreement is not necessary to an effective reorganization. In order for the Agreement to be necessary for an <u>effective</u> reorganization, the debtor must show that the Agreement is necessary to effect a reorganization <u>and</u> that there is a reasonable possibility of a successful reorganization within a reasonable time. *Timbers*, 98 L.Ed.2d at 751. Neither element is present here, as the Agreement is subject to the prepetition Notice of Termination, there is no plan of reorganization on file, and there is no likelihood that a plan will be filed and confirmed before expiration of the 120-day notice period.

**C.** **<u>Code Section 108(a) Does Not Toll the Running of the 120-day Termination Notice</u>**

Bankruptcy Code section 108(b) does not extend the May 23, 2014 date on which the Agreement is scheduled to terminate. That section provides in pertinent part:

> (b) Except as provided in subsection (a) of this section, if applicable non-bankruptcy law, an order entered in a non-bankruptcy proceeding, <u>or an agreement</u> fixes a period within which the debtor . . . may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of –
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

9

(2) 60 days after the order for relief.

11 U.S.C. § 108 (b)(emphasis added). As applied to this case, the Agreement will terminate regardless of whether the Hospital cures its prepetition defaults. This is because Gateway exercised its right to terminate the Agreement without cause. Thus, even if the Hospital were to cure its prepetition and postpetition defaults within the time permitted by Section 108, the Agreement would remain subject to the prepetition Notice of Termination.

### 3. Conclusion

For all of the foregoing reasons, Gateway requests entry of an order confirming the absence of any automatic stay of 11 U.S.C. § 362 with regard to (1) the Notice of Termination, (2) the running of the 120-day time period following the Notice of Termination, and (3) the effectiveness of said termination on May 23, 2014.

Alternatively, Gateway requests an order granting such stay relief as may necessary, pursuant to 11 U.S.C. § 362(d)(1,2), to fully and finally effectuate an immediate termination of the Agreement.

And finally, Gateway requests that any such order be without prejudice to Gateway's administrative or other claims arising from the Services or the Agreement.

DATED: March 3, 2014.

                SHERMAN & HOWARD L.L.C.

                By /s/ Thomas C. Axelsen (011163)
                   Thomas C. Axelsen
                   201 East Washington Street, Suite 800
                   Phoenix, Arizona 85004-2327
                   Email: taxelsen@shermanhoward.com
                   Attorneys for Gateway Anesthesia Associates, P.L.L.C.

COPY of the foregoing mailed
March 3, 2014 to:

Gilbert Hospital, LLC.
5656 South Power Road

10

| | |
|---|---|
| 1 | Gilbert, AZ 85295 |
| 2 | Pernell W. McGuire |
| 3 | DAVIS MILES MCGUIRE GARDNER, PLLC<br>320 N. Leroux Street, Suite A |
| 4 | Flaggstaff, AZ 86001 |
| 5 | Daniel E. Garrison<br>Jessica R. Kenney |
| 6 | ANDANTE LAW GROUP OF DANIEL E. GARRISON, PLLC<br>Scottsdale Financial Center I |
| 7 | 4110 North Scottsdale Road, Suite 330<br>Scottsdale, AZ 85251 |
| 8 | Bryce A. Suzuki |
| 9 | BRYAN CAVE LLP<br>2 N. Central Avenue # 2200 |
| 10 | Phoenix, AZ 85004 |
| 11 | Edward K. Bernatavicius<br>Office of the U.S. Trustee |
| 12 | 230 N. First Avenue, Suite 204<br>Phoenix, AZ 85003 |
| 13 | Jerry Seelig |
| 14 | Seelig + Cussigh HCO LLC<br>4275 Baldwin Avenue |
| 15 | Culver City, CA 90232 |
| 16 | All creditors listed in Debtor's List of Creditors<br>Holding 20 Largest Unsecured Claims |
| 17 | |
| 18 | /s/ Christana Eckert |

11